# In the United States Court of Federal Claims

No. 12-97C
(Filed March 12, 2012) 1/

```
* * * * * * * * * * * * * * * * * * * * * *   *
                                             *
CONTRACTING CONSULTING              *   Post-award bid protest; 28
ENGINEERING LLC,                    *   U.S.C. § 1491(b)(1) (2006);
                                    *   preliminary injunctive relief.
        Plaintiff,                  *
                                    *
        v.                          *
                                    *
THE UNITED STATES,                  *
                                    *
        Defendant,                  *
                                    *
        and                         *
                                    *
DYNCORP INTERNATIONAL LLC,          *
                                    *
        Defendant-Intervenor.       *
                                    *
* * * * * * * * * * * * * * * * * * * * * *   *
```

David S. Black, McLean, VA, for plaintiff. Jacob W. Scott and Oliya S. Zamaray, Holland & Knight LLP, of counsel.

Devin A. Wolak, Washington, DC, with whom was Assistant Attorney General Tony West, for defendant. Kathleen D. Martin, U.S. Department of State, of counsel.

Richard J. Vacura, McLean, VA, for defendant-intervenor. K. Alyse Latour and Susan J. Borschel, Morrison & Foerster LLC, of counsel.

## MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION

---

1/ This opinion was originally filed under seal on February 24, 2012. The parties were requested to notify the court of any redactions. Defendant did not request any redactions, and plaintiff requested two, which have been implemented. Intervenor was over-zealous, and most of its requested redactions have not been adopted lest the opinion be rendered meaningless.

<u>**FOR PRELIMINARY INJUNCTION**</u>

<u>**MILLER**</u>, Judge.

**FACTS**

This post-award bid protest is before the court after argument on the Motion for Preliminary Injunction filed by Contracting, Consulting, Engineering LLC ("plaintiff") on February 16, 2012.

I. <u>Background</u>

On June 7, 2011, the United States Department of State (the "agency") issued Request for Proposal ("RFP") designated Solicitation No. SAQMMA11R0043 (the "Solicitation") seeking proposals for supplies and services to support the agency in assisting the Colombian National Police Aviation ("ARAVI") program that operates throughout Colombia in furtherance of the agency's counternarcotics effort. Plaintiff was the incumbent contractor on the previous iteration of the contract and had been performing pursuant to a task order issued under its General Services Administration ("GSA") contract ("GSA task order"). <u>See</u> Decl. of Terry Lord, Jr. (undated), ¶ 4. The task order was effective from July 12, 2010, through July 11, 2011, and was necessary to accommodate the follow-on acquisition under the Solicitation. <u>Id.</u> Because it was apparent that the new award would not be made until after the GSA task order's expiration, the agency exercised its option to extend plaintiff's performance under the contract and issued a three-month task order pursuant to 48 C.F.R. ("FAR") § 52.217-8 (2011), effecting plaintiff's performance through October 2011. The agency decreased the scope of the services to be provided under the task-order extension. Plaintiff was ordered to decrease the number of personnel and cease procurement of aviation spare parts.

The Solicitation informed offerors that award would be made to the lowest-priced, technically acceptable offeror. On September 15, 2011, plaintiff was informed via e-mail that it was an unsuccessful offeror. Compl. filed Feb. 10, 2012, ¶ 31. Plaintiff filed a pre-award protest the following day with the United States Government Accountability Office (the "GAO"). <u>Id.</u> On September 30, 2011, the agency opted to take corrective action and informed the GAO that it would reevaluate past performance and reconsider deficiency determinations. <u>Id.</u> The agency confirmed its intention in an October 3, 2011 e-mail sent to the GAO. <u>Id.</u>

On October 15, 2011, the agency awarded Contract No. SAQMMA11C0225 to DynCorp International ("intervenor") after determining that it was the only technically acceptable offeror. <u>Id.</u> ¶ 1; <u>see also</u> Lord Decl. ¶ 6. On October 27, 2011, the agency

notified plaintiff via e-mail that it was an unsuccessful offeror because its proposal was rated technically unacceptable.  Compl. ¶ 32.  Plaintiff filed a post-award protest with the GAO on October 28, 2011.  In accordance with the Competition in Contracting Act, 31 U.S.C. § 3553 (2006), the agency issued a stop-work order.  Shortly thereafter, M-7 Aerospace ("M-7")—another unsuccessful offeror—also filed a post-award protest with the GAO.

Due to the GAO protests, the agency issued the final three-month extension permitted by FAR 52.217-8, which enabled plaintiff's performance through January 10, 2012.  This task order, similar to the task order extending plaintiff's performance through October 2011, was also of decreased scope.  On January 11, 2012, because the GAO protests still were pending and the current task order had expired, the agency issued a three-month sole-source task order to plaintiff.  The period of performance pursuant to this task order ends on April 10, 2012.

Plaintiff's and M-7's protests were denied on February 2, 2012, and February 13, 2012, respectively.  On February 14, 2012, Terry Lord, Jr., Administrative Contracting Officer for ARAVI, lifted the stop work order.

## II.  Proceedings in the United States Court of Federal Claims

On February 10, 2012, plaintiff filed a complaint in the United States Court of Federal Claims alleging that the agency's determination that intervenor submitted the only technically acceptable proposal was arbitrary and capricious because intervenor's proposal "fails to meet the Solicitation's express requirements for senior program management staff" and "violates the terms of the Solicitation in pricing the procurement and freight forwarding functions." Compl. ¶¶ 12-13.  Plaintiff seeks permanent injunctive relief prohibiting the agency from authorizing intervenor to begin performing the contract and requiring the agency to amend the Solicitation and request revised proposals, as necessary.

On February 16, 2012, pursuant to the parties' proposed briefing schedule, plaintiff filed its Motion for Preliminary Injunction.  Defendant and intervenor opposed on February 21, 2012.  During argument this date, plaintiff justified its submission of a supplemental declaration in support of showings to meet the three injunctive criteria relating to irreparable harm, balance of hardships, and the public interest.  Over defendant's objection, the court granted plaintiff's motion filed on February 23, 2012, for leave to file the declaration.

**DISCUSSION**

I. Standard of review

The Court of Federal Claims derives jurisdiction over bid protests from the Tucker Act, 28 U.S.C. § 1491(b)(1) (2006). Specifically, the court has jurisdiction over actions by an "interested party" objecting to (1) a solicitation by a federal agency for bids or proposals for a proposed contract; (2) a proposed award or the award of a contract; or (3) any alleged violation of a statute or regulation in connection with a procurement or a proposed procurement. 28 U.S.C. § 1491(b)(1); see also Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004). The court may "award any relief that the court considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2).

The award of injunctive relief is extraordinary and only merited in "'extremely limited circumstances." United States v. John C. Grimberg Co., 702 F.2d 1362, 1372 (Fed. Cir. 1983). On request for preliminary injunctive relief, the court must weight the following four factors: (1) the likelihood of plaintiff's success on the merits; (2) irreparable harm to plaintiff if the injunction is not granted; (3) the balance of hardship between the parties; and (4) the public interest. Erico Int'l Corp. v. Vutec Corp., 516 F.3d 1350, 1353-54 (Fed. Cir. 2008) (vacating trial court's grant of preliminary injunction); see also Abbott Labs. v. Sandoz, Inc., 544 F.3d 1341, 1344 (Fed. Cir. 2008) (affirming trial court's grant of preliminary injunction); U.S. Ass'n of Imps. of Textiles & Apparel v. United States, 413 F.3d 1344, 1346 (Fed. Cir. 2005). No single factor is determinative, and "the weakness of the showing regarding one factor may be overborne by the strength of the others." FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993). Cf. RhinoCorps Ltd. v. United States, 87 Fed. Cl. 261, 273 n.14 (2009) (discussing more recent binding precedent that would appear not to contemplates weighted showings.) Nonetheless, the court must enter findings on all four factors. See Pretty Punch Shoppettes, Inc. v. Hauk, 844 F.2d 782, 784 (Fed. Cir. 1988). Injunctive relief will issue upon a showing by a preponderance of the evidence. See Bannum, Inc. v. United States, 60 Fed. Cl. 718, 723-24 (2004), aff'd, 404 F.3d 1346 (Fed. Cir. 2005); 2/ see also

_____

2/   Defendant cites the trope that a party must demonstrate its entitlement to preliminary injunctive relief by clear and convincing evidence. See Bannum, 60 Fed. Cl. at 723-24 (distinguishing lack of case law in support of 1983 trial court opinion that sponsored this mind-bending standard). Although a number of cases from the Court of Federal Claims applied this heightened burden, it has not been adopted by the Court of Appeals for the Federal Circuit. Furthermore, Congress conferred the court's bid protest jurisdiction in 1982 with the specific instruction to apply the law developed by the District of Columbia Circuit, the so-called Scanwell doctrine, see Scanwell Labs. Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970). See CACI, Inc.-Federal v. United States, 719 F.2d 1567, 1573 (Fed. Cir. 1983) (citing S. Rep. No. 275, 97th Cong., 2d Sess. 23 (1981), reprinted in 1982 U.S.C.C.A.N. 11,

Enrico Int'l, 516 F.3d at 1359 (Newman, J., dissenting) (stating that on motion for preliminary injunction "[t]he correct criterion . . . is whether defendants have shown that they are likely to succeed on the merits, on the standards and burdens of proof as would prevail at trial.").

To demonstrate a likelihood of success on the merits plaintiff must prove that the agency's decision was arbitrary, capricious, an abuse of discretion, or otherwise  not  in accordance with the law.  5 U.S.C. § 706(2)(A) (2006); 28 U.S.C. § 1491(b)(4).  Plaintiff's burden in proving its likelihood of success is equivalent to the standards and burdens of proof required to prevail on the merits.  Erico Int'l, 516 F.3d at 1359 (Newman, J., dissenting).

II.  The parties' arguments

1.  The Solicitation's requirements for senior program management staff

The Solicitation required that an offeror's proposed Program Manager ("PM") and Deputy Program Manager ("DPM") have a specified number of years of program management and project management experience.  See Compl. at App. A16.  It further required offerors to submit their résumés to demonstrate that the Solicitation's requirements were met.  Id.  Plaintiff argues that the Technical Evaluation Panel (the "TEP"), in evaluating intervenor's proposal, improperly relied on information that was not contained in the proposal in concluding that intervenor's proposed PM and DPM each possessed the experience required by the Solicitation.  Pl.'s Br. filed Feb. 16, 2012, at 11-16.

Plaintiff explains that the résumés submitted by intervenor listed various positions that the proposed PM and DPM each had held with the United States Army (the "Army").  Id. at 11-14.  Although the résumés indicated the total amount of time in which the proposed PM and DPM were employed by the Army, they did not specify the amount of time that the proposed PM and DPM served in each position.  Id.  Nonetheless, the Army experience was essential to the TEP's conclusion that the proposed PM and DPM met the Solicitation's requirements.  Id. at 12-15.  The agency explained in the GAO proceedings that three members of the TEP formerly were military officers who knew from their past experience that "positions entailing command of an airborne unit, company or battalion are typically for controlled tours of 3 years for a domestic assignment and 1 year for an overseas assignment."

---

2/  (Cont'd from page 4.)

33; H.R. Rep. No. 312, 97th Cong., 1st Sess. 43 (1981)); see also Banknote, 2004 U.S. App. LEXIS 8184, at *10; Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1079 (Fed. Cir. 2001).  The Scanwell line of cases did not require proof by clear and convincing evidence.  See Bannum, 60 Fed. Cl. at 729.

Id. at App. E8.  Accordingly, they applied their personal knowledge to determine the amount of time the proposed PM and DPM spent in each listed position, crediting them with three years of experience for domestic positions and one year of experience for overseas positions. Id. at 12-15.

Plaintiff notes that, based on these "unsupported assumptions," id. at 16, regarding length of service, the TEP assigned intervenor an "acceptable" rating for Factor 1, Subfactor F - Senior Program Management Staff/Key Personnel, id. at 26.  Plaintiff thus challenges the assignment of this rating as arbitrary, capricious, an abuse of discretion, or contrary to law, explaining that the Solicitation expressly prohibited the TEP's reliance on personal knowledge of its members because all relevant information must be set forth in the résumés. Id.  Because the résumés do not include dates of service sufficient to show that the proposed PM and DPM possessed the requisite experience, plaintiff contends that the TEP should have concluded that intervenor's proposal was technically unacceptable.  Moreover, plaintiff argues that the evaluators lacked personal knowledge specific to the positions held by intervenor's proposed PM and DPM; took no action to verify the information on which they relied; and failed to consider that not all domestic and overseas tours of duty are for three years and one year, respectively.  Id. at 26-27.

Defendant responds that the Solicitation did not require résumés explicitly to include the dates of service corresponding to each listed position.  Def.'s Br. filed Feb. 21, 2012, at 15.  Section L.13, one of the Instructions provisions, requires only that the résumés "clearly demonstrate the degree of significant experience as it relates to the position qualifications stated in the solicitation.  Significant experience is that specialized experience . . . of sufficient duration to achieve a continuing expertise, and . . . of a level of responsibility appropriate to verify employment commitments."  Id. at App. DA10.  According to defendant, nowhere does section L require that the résumés include a breakdown of the time spent in each position.  Id. at 15.  Moreover, even if a breakdown was required, a failure to include it would not require the agency to deem the proposal unacceptable; rather, the Solicitation states that noncompliance with the Solicitation may result in a rating of unacceptable. Id. at 15-16.  Finally, defendant notes that, although plaintiff faults the agency for failing to consider whether there are exceptions to the rule that domestic and overseas tours are three years and one year, respectively, plaintiff itself "provides no support beyond its own speculation for the alleged exceptions upon which it relies."  Id. at 16.

Despite defendant's contention that the Solicitation did not require that the résumés identify the amount of time spent in each position, the evaluation factors contemplated that offerors would clearly set forth the information necessary to demonstrate that their proposed PM and DPM had the required number of years of experience in each qualifying position. While, as defendant has noted, noncompliance with the Solicitation by failing to include such information did not render an offeror technically unacceptable, plaintiff has raised a troubling

question regarding the propriety of the TEP members' assigning dates of service to the positions held by intervenor's proposed PM and DPM based on a typical tour of duty in the Army.

Plaintiff falls short of showing a substantial likelihood of success. Plaintiff requires more information, putatively from defendant, concerning the typicality of durations for overseas and domestic tours of duty in the Army. Defendant hastens to point out that the TEP evaluators should have been satisfied with the résumés' claims to twenty-five and nineteen years of program management experience that were listed, respectively, for the two managers. Def.'s Br. filed Feb. 21, 2012, at App. DA10. However, the TEP was not satisfied with the blanket assertion and proceeded to analyze the descriptions. Apparently, the TEP took seriously the section L.26.1.3 requirement that "[t]he offeror['](s) discussion must clearly and convincingly demonstrate how the requirements of the contract will be met." Id. at App. DA19. Defendant argues for strict adherence to such a standard. See supra note 1.

Section L.26 also instructed that any "offeror shall present information in sufficient detail to enable an evaluator, having a general professional expertise in the response area of interest, to thoroughly understand the response to this solicitation." Def.'s Br. filed Feb. 21, 2012, at App. DA17. The fact that the TEP evaluators did not accept the blanket assertions in intervenor's proposed résumés that the minimum requirements were met and supplied their own correlation to give a total for each of the two requirements (program management and aviation management) is not consistent with defendant's argument.

Plaintiff raised allegations of disparate treatment, arguing that the TEP applied personal knowledge in evaluating intervenor's proposal, but refused to do the same for plaintiff. Plaintiff explains that it received an unacceptable rating because it did not demonstrate its ability to establish an account with the U.S. Army's Logistics Support Activity ("LOGSA"). Pl.'s Br. filed Feb. 21, 2012, at App. B9. One member of the TEP, however, knew that plaintiff already had established a LOGSA account during its incumbency and did not draw on this personal knowledge. Decl. of Stephen H. Harris, Feb. 16, 2012, ¶ 25. Additionally, plaintiff noted that it was rated unacceptable for failing to explain how it would integrate Analysis, Design, Development, and Implementation Employee training ("ADDIE") into its training program, despite the fact that at least one member of the TEP was informed periodically during plaintiff's incumbency that plaintiff uses and incorporates ADDIE in its training programs.

At this stage of the proceedings, plaintiff has shown only that one evaluator declined to draw on his personal contract experience with the incumbent. The relevant evaluation criterion under section M.8, "Use of Supporting Information," reserves to the Government "the right to utilize all information available at the time of evaluation[.]," Def.'s Br. filed

Feb. 21, 2012, at App. D44, to include information in records and from commercial sources, as well as publicly available information. Information "through other sources" is contemplated, but only comes into play if it "substantially disagrees" with the offeror's proposal, which is not the case at bar. Id. This showing has potential.

With respect to the ADDIE requirement, however, plaintiff was faulted for inadequately demonstrating its integration of the ADDIE core processes. Pl.'s Br. filed Feb. 21, 2012, at App. B10. At this stage of the proceedings, plaintiff has not shown that any knowledge on the part of the evaluators would be permissible or, if so, could supply a satisfactory approach if plaintiff failed to present one.

2.   The solicitation's requirements for pricing procurement and
       freight-forwarding functions

Plaintiff challenges that intervenor's price proposal violated the Solicitation's instructions for pricing procurement and freight-forwarding functions and thus should have been deemed ineligible for award. Pl.'s Br. filed Feb. 16, 2012, at 18. Plaintiff explains that the answers to questions regarding the Solicitation invited offerors to price these functions as (1) PMO costs under contract line item number ("CLIN") X001, (2) an hourly rate based on a forty-eight hour workweek and applied to a specific number of employees, or (3) a separate CLIN. Id. at 18-19, 21, at App. A39. Despite this instruction, intervenor priced its freight-forwarding and procurement functions in [
                                                                                    ]. See id. at 19, 21. Because this means of pricing does not comport with any of the three options specified in the agency's answers to a question on how to propose freight-forwarding costs, plaintiff contends that the agency should have concluded that intervenor failed to propose a price for its freight-forwarding and procurement functions. Id. Plaintiff further notes that, because the proposed [          ] applied to both the freight-forwarding function and the procurement function, the agency did not know intervenor's prices because it could not identify the portion of the fee applied to each function. Id. at 19-20, 22.

Plaintiff acknowledges the agency's explanation as to how it determined intervenor's prices, but finds such explanation "inconsistent with the contemporaneous record describing the scope of the price evaluation." Id. at 20. According to the agency, it priced intervenor's freight-forwarding function by referencing information in intervenor's technical proposal indicating that intervenor would use its subcontractor—an approved freight forwarder—to perform the freight-forwarding function and thus would price this function through its indirect cost elements. See id. Contrary to this assertion, plaintiff highlights the report prepared by the Price Evaluation Panel (the "PEP"), which suggests that the PEP did not review offerors' technical proposals. Id.

Plaintiff concludes that, not only did intervenor's failure to price certain functions in accordance with the Solicitation's instructions prevent the agency from determining whether the proposed prices were fair and reasonable, but it also rendered the agency's determination that intervenor's proposal complied with all of the Solicitation's requirements arbitrary and capricious and lacking a rational basis. In the absence of these errors, the TEP "would have concluded that the Agency received no technically acceptable offerors . . . and would have been required to take action that would have allowed [plaintiff] to submit a revised proposal and compete for the contract." Id. at 34. As the incumbent, plaintiff asserts a substantial chance that it would receive the award. Id. Accordingly, plaintiff contends that it has demonstrated by a preponderance of the evidence its likelihood of success on the merits.

Defendant rejoins that the pricing requirement on which plaintiff relies was derived from a question-and-answer exchange contained in Amendment 002 to the RFP. Def.'s Br. filed Feb. 21, 2012, at 7. That exchange reads, as follows:

> "Section 2.1.5 of the SOW (Customer Service Section) indicates supply is received by the Freight Forwarder. Freight Forwarding is listed on sheet #5 of the Section B Pricing Tables (1-7), but not listed on the Section J USG Level of Effort Breakdown. Confirmation of the FTE total, by task area is required.
>
> Question: Is a Freight Forwarder required as part of the level of effort or not?
>
> Answer: The labor categories provided are necessary for the completion of the mission[;] however, the labor mix is discretionary. If freight-forwarding positions are not listed, they may be included as a PMO cost or as a separate CLIN as proposed by the offeror. A Freight Forwarder is required."

Id. at 7-8 (quoting Pl.'s Br. filed Feb. 16, 2012, at App. A39). Although the answer does permit an offeror to price its freight-forwarding function in the manner identified by plaintiff, it does not foreclose other means of pricing this function, nor can it be construed as "an affirmative characterization of the alleged RFP pricing requirement for freight forwarding." Id. at 8.

Defendant responds that the Solicitation itself does not contain a specific pricing instruction. See id. at 7. Section L addresses the freight-forwarding function generally and states, "The offeror proposes a sound approach for implementing Freight Forwarding Standard Operating Procedures (SOPs)." Id. at App. DA23. It does not provide any pricing instruction. Id. at 7. Section M contains language similar to that in section L, but also does not contain any pricing requirements. Id.

Defendant is correct.  Although the question-and-answer exchange did identify options for pricing the freight-forwarding and procurement functions, the Solicitation did not contain a specific pricing instruction.  This was confirmed in an e-mail from Kathleen D. Martin, Attorney Advisor to the agency, in response to a request from the GAO for more information regarding the pricing of the procurement and freight forwarding-functions.  Ms. Martin's response states that "the Solicitation allowed offers [*sic*] to propose freight forwarding in accordance with their own business practices and did not dictate a specific methodology."  Pl.'s Br. filed Feb. 16, 2012, at App. E1.  The court agrees and notes that the Solicitation provides only that "[t]he offeror propose[] a sound approach for implementing Freight Forwarding Standard Operating Procedures (SOPs)."  Def.'s Br. filed Feb. 21, 2012, at App. DA23.  Accordingly, plaintiff has not shown a substantial likelihood of success on the merits by its argument that intervenor, by pricing its freight-forwarding and procurement functions as a fee on indirect costs, failed to comply with the Solicitation's requirements.

## III.  Other factors warranting injunctive relief

Plaintiff contends that it will be irreparably harmed in the absence of preliminary injunctive relief because it will suffer a loss of personnel, many of whom will be hired by intervenor.  Second Decl. of Stephen H. Harris, Feb. 23, 2012, ¶ 6.  Intervenor will not only appropriate a competitive advantage by acquiring employees familiar with the contract, but it also will gain access to plaintiff's proprietary information.  Id.  Moreover, if plaintiff is successful in obtaining a permanent injunction and subsequently is awarded the contract, it is unlikely it will be able to re-hire its former employees from intervenor because many may be working on other of intervenor's contracts in South America.  Id. ¶ 10.

Defendant argues that economic harm, such as that alleged by plaintiff, has been held insufficient to establish irreparable harm.  Def.'s Br. filed Feb. 21, 2012, at 19 (citing Minor Metals, Inc. v. United States, 38 Fed. Cl. 379, 381-82 (1997)).  Moreover, defendant challenges plaintiff's assertion—without showings based on personal knowledge, but based on hearsay and speculation—that intervenor is attempting to hire plaintiff's employees and discover plaintiff's proprietary information.  Def.'s Br. filed Feb. 21, 2012, at 20.

The court recognizes that the contract at issue involves highly specialized work aimed at assisting a foreign police force in a foreign country.  Consequently, the qualified labor pool necessarily is limited, increasing the value of plaintiff's employees.  Case law nonetheless establishes that an incumbent contractor's loss of employees to the awardee does not constitute irreparable harm.  See Eskridge Research Corp. v. United States, 92 Fed. Cl. 88, 99 (2010); Consol. Eng'g Servs., Inc. v. United States, 64 Fed. Cl. 617, 634 (2005).  Moreover, plaintiff's allegations that intervenor intends to hire plaintiff's employees and abscond with plaintiff's proprietary information are, at this juncture, not substantiated.

Accordingly, plaintiff has not sufficiently shown that it will be irreparably harmed if a preliminary injunction does not issue.

Defendant contends that the balance of harms tilts in the agency's favor because, on account of plaintiff's protests, the agency already has been waiting for five months to begin transitioning the contract to intervenor, a delay that it alleges will jeopardize its mission. Def.'s Br. filed Feb. 21, 2012, at 22; Lord Decl. ¶¶ 14-18. Mr. Lord asserted that the agency would be committed to plaintiff for one year unless it could order spare parts under the new contractor. See Lord Decl. ¶¶ 17-18. Although plaintiff can place orders for spare parts, some of those parts have a lead time of eight to nine months. Id. ¶¶ 14-15. Plaintiff disagreed during argument, explaining that an administrative procedure exists whereby plaintiff could turn over previously placed orders to the next contractor. Plaintiff's showing is inconclusive.

Finally, both parties argue that concern for the public interest warrants a finding in their favor. Plaintiff contends that the public interest in preserving the integrity of the procurement system is not served if intervenor is permitted to "poach" plaintiff's employees and obtain its proprietary information. Pl.'s Br. filed Feb. 16, 2012, at 38. Defendant responds that the public interest is concerned with continuing the counternarcotics effort and preventing incumbent contractors that have exhausted their contract extensions from obtaining additional extensions by initiating court proceedings. Def.'s Br. filed Feb. 21, 2012, at 23. In effect, both parties are arguing that the public interest is served when procurements are conducted in accordance with applicable laws and regulations. See id.; Pl.'s Br. filed Feb. 16, 2012, at 38. As noted by the United States Court of Appeals for the Federal Circuit, when "[b]oth sides . . . contend that they are seeking to effectuate [this] important goal[] . . . [the court may find] that the public interest does not clearly favor either party in th[e] dispute." Am. Signature, Inc. v. United States, 598 F.3d 816, 830 (Fed. Cir. 2010). Accordingly, the court finds that the public interest is served by both parties' concerns and, therefore, does not favor either party.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Plaintiff's Motion for Leave To File Second Declaration of Stephen H. Harris is granted.

2. Plaintiff's motion for a preliminary injunction is denied.

11

3.  By February 29, 2012, any request regarding discovery that cannot be accommodated voluntarily shall be brought to the court's attention by telephone conference call to be held on the record.

4.  Paragraph 5 of the order entered on February 14, 2012, is modified insofar as by March 9, 2012, plaintiff shall file its motion for judgment on the administrative record.

5.  Paragraph 6 of the order entered on February 14, 2012, is modified insofar as by March 16, 2012, defendant and defendant-intervenor shall file their oppositions and cross-motions.

6.  Paragraph 7 of the order entered on February 14, 2012, is modified insofar as by March 20, 2012, plaintiff shall file its opposition and reply.

7.  Paragraph 8 of the order entered on February 14, 2012, is modified insofar as by March 23, 2012, defendant and defendant-intervenor shall file their replies.

8.  Paragraph 9 of the order entered on February 14, 2012, is modified insofar as argument on the parties' cross-motions for judgment on the administrative record shall be held at 2:00 p.m. on Tuesday, March 27, 2012.

9.  By March 2, 2012, the parties shall identify by brackets any material subject to redaction before this opinion issues for publication.


/s/ Christine O.C. Miller
_____
**Christine Odell Cook Miller**
Judge