# In the United States Court of Federal Claims

No. 12-97C
(Filed March 19, 2012)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| **CONTRACTING CONSULTING ENGINEERING LLC,** | Post-award bid protest; motions to supplement administrative record. |
| Plaintiff, | |
| v. | |
| **THE UNITED STATES,** | |
| Defendant, | |
| and | |
| **DYNCORP INTERNATIONAL LLC,** | |
| Defendant-Intervenor. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

David S. Black, McLean, VA, for plaintiff. Jacob W. Scott and Oliya S. Zamaray, Holland & Knight LLP, of counsel.

Devin A. Wolak, Washington, DC, with whom was Assistant Attorney General Tony West, for defendant. Kathleen D. Martin, U.S. Department of State, of counsel.

Richard J. Vacura, McLean, VA, for defendant-intervenor. K. Alyse Latour and Susan J. Borschel, Morrison & Foerster LLC, of counsel.

## ORDER ON PLAINTIFF'S THREE MOTIONS TO SUPPLEMENT THE ADMINISTRATIVE RECORD

**MILLER**, Judge.

On March 9, 2012, plaintiff filed the following three motions:  Plaintiff's Motion for Leave To Supplement Administrative Record with Army regulations (ECF 38); Plaintiff's Motion for Leave To Supplement Administrative Record and the Court Record with an updated declaration (ECF 39); and Plaintiff's Motion for Leave To Supplement Administrative Record with two declarations by military experts (ECF 40).  By order entered on March 12, 2012, the court expedited briefing.  Defendant filed a combined response on March 14, 2012.  Plaintiff filed its combined reply on March 16, 2012.

Resolution of plaintiff's motions turns on whether the court is capable of providing meaningful judicial review on the administrative record as it was constituted when the agency rendered its decision.  In granting a motion to supplement, a court must be mindful not to alter the proceeding to one subject to *de novo* review.  Binding precedent provides that when deciding a motion for judgment on the administrative record, the focal point for judicial review "should be the administrative record already in existence, not some new record made initially in the reviewing court."  Camp v. Pitts, 411 U.S. 138, 142 (1973) (per curiam); see also Advanced Data Concepts v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000).  However, it must be remembered that the "administrative record is a fiction."  CCL Serv. Corp. v. United States, 48 Fed. Cl. 113, 118 (2000).  The "administrative record is not a documentary record maintained contemporaneously with the events or actions included in it.  Rather, the administrative record is a convenient vehicle for bringing the decision of an administrative body before a reviewing agency or a court."  Tech Systems, Inc. v. United States, 50 Fed. Cl. 216, 222 (2001).

Accordingly, the Court of Federal Claims does not "apply an iron-clad rule automatically limiting its review to the administrative record." GraphicData, LLC v. United States, 37 Fed. Cl. 771, 779 (1997).  Because the flexibility of the court's scope of review does not give the parties carte blanche to supplement the record, "the judge should determine whether the agency action before the court is susceptible to a record review.  If the answer is yes, the judge must limit review to the record."  Id. at 780; see also Lion Raisins, 51 Fed. Cl. at 244.  If the answer is no, a party may supplement the administrative record when necessary to prove that evidence not in the record is evidence without which the court cannot fully understand the issues.  See Lion Raisins, 51 Fed. Cl. at 244.  See generally Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States, 56 Fed. Cl. 502, 508 (2003) (footnote omitted).

In ruling on motions to supplement, the United States Court of Appeals for the Federal Circuit in Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1380 (Fed. Cir. 2009), has allowed supplementation of the administrative record "only if the existing record is insufficient to permit meaningful review consistent with the APA."  Axiom, 564 F.3d [at] 1380.  A bid protest brought in the Court of Federal Claims contemplates that the record

2

before the court will include post-agency-action evidentiary submissions.  A court cannot give due regard to the interests of national defense and national security without accepting a declaration or affidavit from a responsible official.  28 U.S.C. § 1491(b)(3).  A court cannot examine agency actions that are assailed as a conflict of interest, bias, or other extra-legal activity without considering evidence that was not before the agency when the administrative decision was made.  Nor can a court evaluate the parties' factual showings regarding the three equitable findings for injunctive relief without accepting post-agency-action evidentiary submissions.  See Acrow Corp. of Am. v. United States, 96 Fed. Cl. 210, 274-81 (2010) (order granting in part motion to supplement).

Thus, while the court record properly is augmented with evidentiary submissions regarding matters that pertain to the standards for judicial relief, a protestor also must be allowed to offer evidence to support its position that the contracting officer did not make a decision grounded on a rational basis.  See Savantage Fin. Servs., Inc. v. United States, 595 F.3d 1281, 1285-86 (Fed. Cir. 2010) (upholding Court of Federal Claims' decision denying protest, but permitting protestor to offer evidence to support position that agency's requirements, which restricted competition by effectively guaranteeing that they could be satisfied by only one offeror, lacked rational basis).

Defendant is correct that Army regulations are legal authorities and not a matter for supplementation.  They can be cited as authorities in plaintiff's brief, and the court will regard them as authorities in support of plaintiff's moving brief.  The court is grateful nonetheless that plaintiff provided the court with a copy of the 700 pages of regulations.

With respect to the second motion, defendant is correct that Mr. Harris's third declaration, Third Declaration of Stephen [H.] Harris, Mar. 9, 2012, reiterates points made in his first declaration insofar as it addresses the subjects of irreparable harm and balancing of hardships, two of the injunctive criteria that are adjudicated only in a court proceeding. While not objecting to the introduction of additional, if largely duplicative, assertions in Mr. Harris's third declaration and agreeing that they properly are part of the court record, see Def's. Br. filed Mar. 14, 2012, at 6-7, defendant objects to those portions of Mr. Harris's third declaration that purport to substantiate an argument based on unequal or disparate treatment—a claim absent from plaintiff's complaint and, indeed, one that plaintiff disavows making.  See Pl.'s Br. filed Mar. 16, 2012, at 3 & n.2.  In this regard, defendant misconceives plaintiff's argument.  Plaintiff is not contending that its proposal should have been treated differently, but that the Technical Evaluation Panel's (the "TEP's") failure to supply missing information based on the evaluators' experience with plaintiff-incumbent's contract shows that they acted arbitrarily and capriciously in doing so for defendant-intervenor's technical proposal.

This issue is at the heart of ¶¶ 23-31 of Mr. Harris's third declaration, as well as defendant's objections to the two declarations that are the subject of plaintiff's third motion to supplement: Declaration of Barry J. Sottak, Mar. 9, 2012, and Declaration of John N. Dailey, Mar. 9, 2012. These two declarants—both retired Brigadier Generals in the United States Army with careers as Army Aviators—supply information that contradicts that of the TEP evaluators concerning, *inter alia*, the length of tours of duty in the Army, both overseas and in the Continental United States. The two declarants also dispute that the TEP had any reasonable basis for characterizing the résumé experience provided for defendant-intervenor's Program Manager ("PM") and Deputy Program Manager ("DPM") as qualifying experience that satisfied the solicitation's requirements for the respective positions.

It is with this argument that defendant launches its attack on the proffered information as not filling gaps in the record but, instead, substituting the judgment of plaintiff's experts for that of the TEP. In a general sense, defendant is correct. The court must be chary of efforts to engage in a *de novo* review of the TEP's evaluation or to substitute plaintiff's assessment of the technical proposals (as argued to the court) as the reasonable—and therefore sustainable—result. However, this is not what plaintiff is attempting.

The solicitation contained exacting requirements for offerors' submissions concerning the résumé experience of the proposed PM and DPM. See AR 102 (providing that résumés must "clearly demonstrate" that the experience of both the proposed PM and DPM satisfies position qualifications stated in solicitation); AR 111 (requiring that technical proposal "clearly and convincingly demonstrate" how qualifications and requirements will be met); AR 113 (stating that proposed PM and DPM each must have five years of program management experience in aviation programs and ten years and eight years, respectively, of professional aviation management experience).

The solicitation did advise offerors that the technical evaluators would be drawing on their experience to assess the technical acceptability of the proposals. See AR 109 (providing that "the offeror shall present information in sufficient detail to enable an evaluator, having a general professional expertise in the response area of interest, to thoroughly understand the response," and thereby indicating that the TEP members would be drawing on their personal knowledge in evaluating proposals). Contrary to what defendant wants the record to reflect, however, the evaluators did not accept the statement of aggregate years of service on either candidate's résumé; rather, the TEP expressly stated that its members relied on their experience to assign a duration to each of the positions that defendant-intervenor claimed as qualifying. AR 1278 ("[B]ased on the knowledge and experience of the retired officers on the [TEP], such positions entailing command of an airborne unit, company or battalion are typically for controlled tours of 3 years for a domestic assignment and 1 year for an overseas assignment."). To put the matter in stark relief, the TEP rejected the aggregate thirty-three

4

years of experience listed for Victor Fontanez, Jr., who was proposed for PM.  The TEP deemed it necessary—in order to discharge fully its mandate under the solicitation—to associate the duration of a period of service on Mr. Fontanez's résumé with the level of responsibility that the résumé listed.

Plaintiff cannot substantiate its protest by offering evidence that individuals with more knowledge and experience (and higher rank) than the TEP evaluators would have disagreed sharply with the TEP's evaluation because neither Mr. Fontanez nor Vidal Garza, defendant-intervenor's candidate for DPM, ever held the appropriate rank associated with the level of responsibility for the two positions.  However undermining the assessment from these two proffered declarants appears to be, the court cannot allow plaintiff to introduce facts that effectively substitute plaintiff's opinion for that of the TEP's determination of the technical acceptability of the proposals.  See RhinoCorps Ltd. v. United States, 87 Fed. Cl. 261, 272-73 n.13 (Fed. Cl. 2009) (citations omitted); see also E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996) ("[T]he minutiae of the procurement process in such matters as technical ratings . . . involve discretionary determinations of procurement officials that a court will not second guess.").

The point eluding defendant is that the TEP cannot act irrationally in making predicate assumptions in order to fulfill its duty to ensure that defendant-intervenor's proposal met the black-and-white minimum requirements of the solicitation.  The declarations are competent evidence that the assumption of a "typical tour of duty" was irrational, i.e., had no basis in fact.  In other words, while the TEP members were permitted to draw on their experience, it may have been irrational to base their subjective evaluations on a facially irrational assumption.  And it is permissible for plaintiff to offer sworn statements that the key analytical assumption of the evaluators, against which they weighed the résumés' statements of duties and experience, lacked any factual support and was irrational.  It is precisely because the evaluators devised their own gauge to determine the duration of service—after the résumés failed to do so, despite express instructions—that plaintiff must be allowed to challenge that analytical assumption, provided that the challenge can be mounted with objective information.  In its reply brief, plaintiff clarified that, although the Sottak and Dailey Declarations included opinion statements, plaintiff does not rely on those statements and "is not using the . . . Declarations to 'disagree' with or 'substitute [the declarants'] judgment' for the TEP's evaluation."  Pl.'s Br. filed Mar. 16, 2012, at 8 n.5.  Rather, plaintiff seeks admission only of the portions of these declarations that challenge the reasonableness of the TEP's assumption.  See id. at 8 & n.5; cf. Orion Tech., Inc. v. United States, 101 Fed. Cl. 492, 496-97 (2011) (denying motion to supplement administrative record with expert's opinion that apparently contested agency's rejection of plaintiff's proposal based on review of several key documents in administrative record because admission effectively would substitute expert's opinion for that of agency).

If this type of information were not allowed, a protester would be foreclosed from disputing, as a matter of fact, that the evaluation panel irrationally employed an analytical tool that bore no relationship to the experience on which the evaluators purported to rely. Another way of describing the situation is to assume that a solicitation called for the respective rank, as well as statement of responsibilities, for positions qualifying the candidate for program manager. The evaluation panel drew on the experience of its members that only high-ranking officers perform qualifying functions. After the hypothetical evaluation panel stated expressly that the particular subject was evaluated on the basis of that standard because the offeror had not set forth the candidate's various ranks as required by the solicitation, a protester was able to show that the candidate did not hold the ranks that the evaluators assumed he held in order to discharge the putatively qualifying functions. If irrationality could not be shown by declarations that negate the underpinning for the assumption, no protester could show irrationality by impugning a factual predicate or assumption made by evaluators (and not set forth in the solicitation).

Take, for example, the situation presented when a contract awardee proposes certain key personnel that it never intends to provide. In <u>Planning Research Corp. v. United States</u>, 971 F.2d 736 (Fed. Cir. 1992), the contract awardee effected a post-award substitution of the proposed individuals, <u>id.</u> at 740-41. The General Services Board of Contract Appeals (the "GSBCA") sustained the protest brought by an unsuccessful bidder, concluding that the awardee never intended that the proposed personnel would perform the contract. <u>Id.</u> at 739. In reaching its conclusion, the GSBCA relied on evidence of the awardee's post-award activity, as well as extra-record evidence revealing that the awardee had not confirmed the availability of the proposed individuals. <u>Id.</u> at 741-42. The Federal Circuit affirmed, disagreeing with the awardee that its post-award substitution was a matter of contract administration and finding no error in the GSBCA's reliance on evidence that consisted of materials and information not within the record before the agency. <u>Id.</u> at 740-41.

In <u>Planning Research Corp.</u>, it was an objective fact whether the proposed individuals actually were retained to perform the contract. Thus, extra-record evidence disproving the awardee's retention of the individuals was permitted to challenge the alleged retention. Likewise, in the matter *sub judice*, the amount of time that defendant-intervenor's proposed PM and DPM served in each position listed on their résumés are objective facts. The TEP employed a gauge to determine those facts, i.e., the precise lengths of service in each position. The gauge purports to be based on a typicality regarding overseas and domestic tours of duty. The existence or nonexistence of such a typicality can be verified objectively, and plaintiff is permitted to do so with the proffered Sottak and Dailey declarations.

Defendant also is mistaken that plaintiff, through Mr. Harris's third declaration, seeks to show disparate treatment. Plaintiff is attempting to show that at least two TEP members

did not draw on their personal experience with plaintiff-incumbent to substantiate that plaintiff met two technical criteria.  The court agrees that the evaluators were not required to fill gaps in plaintiff's proposal.  However, the TEP's strict adherence to the solicitation regarding the stated requirements that the offeror has established an account with the U.S. Army's Logistics Support Activity and that the offeror has put forth a plan for implementing Analysis, Design, Development, and Implementation Employee training into its training programs could tend to render arbitrary and capricious the evaluators' supplying erroneous information based on their personal experience to find defendant-intervenor's two résumés acceptable.  Was the duration of each qualifying assignment a measuring tool, or did it fill a gap in defendant-intervenor's proposal?  The court will leave resolution of that issue for its decision on the cross-motions for judgment on the administrative record.

Nor is defendant correct that plaintiff is quibbling with just one of multiple factors. That argument remains for defendant's opposition to plaintiff's motion for judgment on the administrative record.  Suffice it to say at this point that the solicitation itself emphasized that the résumés were required to state the type of service and the duration thereof that qualified the candidates proposed for PM and DPM.  Accordingly,

**IT IS ORDERED**, as follows:

1.  Plaintiff's Motion for Leave To Supplement Administrative Record is denied, and the regulations will be deemed authorities cited in support of plaintiff's motion for judgment on the administrative record.

2.  Plaintiff's Motion for Leave To Supplement Administrative Record and the Court Record is granted, with the caveat that the TEP evaluators' disinclination to draw on their personal experience with plaintiff as incumbent to qualify plaintiff's proposal would be relevant only to a claim for disparate treatment, which has not been pleaded.

3.  Plaintiff's Motion for Leave To Supplement Administrative Record is granted only insofar as the Sottak and Dailey declarations address the issue of whether the Army recognizes a typical duration for overseas and domestic assignments.  This includes ¶¶ 1-3 and 9-10 of the Sottak Declaration and ¶¶ 1-3 and 6 of the Dailey Declaration.  Plaintiff's motion otherwise is denied.

/s/ Christine O.C. Miller

_____
**Christine Odell Cook Miller**
Judge